Tagged Opinion



ORDERED in the Southern District of Florida on March 25, 2016.

*Laurel M. Isicoff, Judge*
**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 11-37442-BKC-LMI |
| MIGUEL ANGEL VILLAVERDE, | Chapter 13 |
| Debtor. | |
| _____/ | |

### ORDER ON REQUEST FOR FEES AND REIMBURSEMENT OF EXPENSES

This matter came before me on Application for Compensation of Jordan E. Bublick. (ECF #581) (the "Application").  Having reviewed the Application and the entire court docket exhaustively, and for the reasons stated below, I will award fees in the amount of $34,075.00 and expenses in the amount of $4,829.78, without prejudice to the applicant seeking reimbursement for additional expenses of up to $6,650.00 for payment of the expert, once an appropriate application for the expert's compensation has been submitted for consideration and approval.

Attorneys are allowed reasonable compensation and expenses for actual, necessary services that they render. 11 U.S.C. §§ 330(a)(1)(A)-(B). At issue before me is an application for compensation in a chapter 13 requesting $125,467.50 in fees and $11,730.78 in expenses.

Typically, the debtor's attorney's fees in chapter 13 cases fall under a court's no-look fee. The no-look fee is a presumptively reasonable fee based on local hourly rates, and the general amount of work required by a typical chapter 13 case. *In re Younger,* 360 B.R. 89, 94 (Bankr. W.D. Pa. 2006). These cases are fairly standard and therefore susceptible to a flat rate because much of the work is routine and capable of performance by paralegals. *See In re Howell,* 226 B.R. 279, 281 (Bankr. M.D. Fla. 1998). The Southern District of Florida has published Guidelines for Compensation for Professional Services or Reimbursement of Expenses by Attorneys for Chapter 13 Debtors Pursuant to Local Rule 2016-1(B)(2)(a) (the "Chapter 13 Fee Guidelines").

The Chapter 13 Fee Guidelines allow an attorney to charge a base fee of up to $3,500.00 for a variety of minimum services detailed therein.[1] The Chapter 13 Fee Guidelines also list a variety of other matters for which an attorney may charge a flat fee rather than seeking

---

[1] The base fee includes all of the following services:
1. Verification of debtors' identity, social security number and eligibility for Chapter 13;
2. Timely preparation and filing of petition, schedules, statement of financial affairs, chapter 13 plan, all amendments and all required documents pursuant to the Bankruptcy Code, and Bankruptcy and Local Rules;
3. Service of copies of all filed plans to all creditors and interested parties;
4. Explanation to debtors regarding all debtors' responsibilities, including, but not limited to payments and attendance at the first meeting of creditors;
5. Preparation for and attendance at all first meetings of creditors;
6. Preparation of and attendance at all necessary pre-confirmation motions brought on behalf of debtors;
7. Timely review of all proofs of claim in accordance with Local Rule 2083-1(B);
8. Timely objection to all improper or invalid proofs of claim in accordance with Local Rule 2083-1(B);
9. Preparation for and attendance at all confirmation hearings;
10. Attendance at and defense of all motions against debtors until discharge, conversion or dismissal of the case;
11. Preparation, filing and service of notices of conversions or voluntary dismissals;
12. Preparation, filing and service of motions to deem mortgage current.

compensation through a formal fee application such as plan modifications, motions to value and motions to avoid liens.[2] If the attorney is seeking compensation or expenses exceeding the no-look limit he or she must file a formal fee application. The Chapter 13 Fee Guidelines require the attorney to "describe in detail the actual or estimated services or expenses for which compensation or reimbursement is sought; and (2) include as an attachment a copy of the retainer agreement, if any."

11 U.S.C. §330(a)(3) of the Bankruptcy Code[3] directs courts to take into account "all relevant factors," in evaluating a fee application including, but not limited to:

> (A) the time spent on such services; (B) the rates charged for such service; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; (E) with respect to a professional person whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Compensation in chapter 13 cases is unique in that the Code allows "reasonable compensation to the debtor's attorney for *representing the interests of the debtor* in connection with the bankruptcy case based on a *consideration of the benefit and necessity of such services to the*

---

[2] The full list follows:
1. Post-confirmation modification of plan $500.00
2. Motion for hardship discharge $500.00
3. Motion to purchase, sell or refinance real property $500.00
4. Motion to rehear, vacate dismissal, shorten prejudice period or reinstate case $500.00
5. Motion to avoid lien $500.00
6. Motion to value a motor vehicle, a motor home, or a manufactured home $500.00
7. Motion to value real property $750.00
8. Home Mortgage Loan Modification $500.00

[3] Title 11 of the United States Code.

*debtor* and the other factors set forth in this section." 11 U.S.C. §330(a)(4)(B) (emphasis added).[4]

Thus, when an attorney itemizes his or her time, rather than relying on the no-look fee, a court must consider the section 330(a)(3) factors and whether the services were necessary and beneficial to the debtor.[5]

There are not many published decisions on chapter 13 fee applications. There is no published decision where the application sought fees anywhere near the amount requested in this Application. However, it is clear that when reducing a requested chapter 13 fee the court must carefully articulate why it is lowering the requested compensation. *Potter v. Bailey*, 454 B.R. 715 (S.D. Tex. 2011) (remanding bankruptcy court's order lowering compensation for debtor's attorney because although the bankruptcy court described attorney's bad behavior, it did not articulate which specific actions caused the bankruptcy court to lower the requested compensation). Concern solely over the amount of the fee without any specific instances of abuses or a finding that the hourly rate is unreasonable is not enough to lower the fee. *In re MacKay*, 323 B.R. 903 (Bankr. M.D. Pa. 2005) (granting approximately $22,000.00 in fees and expenses for a hotly contested chapter 13, which was re-converted to chapter 7 because the work was required and the fee was customary for the firm). Instead, a court must use the factors described in section 330 when determining what is the appropriate fee.

There are no chapter 13 cases seeking fees anywhere near Mr. Bublick's six figure request for this chapter 13 case. *See In re Matney*, 365 Fed. App'x 126, 132 (10th Cir. 2010)

---

[4] The only other chapter this provision applies to is chapter 12. In other chapters, the Code requires me to concentrate on the benefit to the estate, as opposed to the benefit of the services to the debtor.

[5] Most cases also refer to the "lodestar" factors, outlined in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Speights & Runyan v. Celotex Corp. (In re Celotex Corp.),* 227 F. 3d 1336 (11th Cir. 2000). However, those lodestar standards more appropriately apply where section 330 does not apply, or otherwise serve, at best, as a guide for a court when applying section 330 criteria. *Accord In re Celotex Corp.,* 227 F. 3d at 1336 (lodestar factors were applied to determine reasonableness of fees *not* governed by section 330).

(affirming bankruptcy court's decision lowering requested fees from $13,750.00 to $4,750.00); *Potter*, 454 B.R. at 724-25 (remanding Bankruptcy court's decision to lower requested fees from $25,000.00 to $5,085.00 because it did not specify reasons why fees were lowered); *In re Younger,* 360 B.R. at 93 (granting only $11,837.00 of requested $17,837.00 fee).

In *In re Younger*, 360 B.R. at 89, David Colecchia, counsel for the chapter 13 debtors, sought recovery of attorney's fees for an adversary proceeding. Mr. Colecchia sought $17,837.00 in fees for expending over 116.58 hours in work which resulted in saving the Debtor $153,216.00 in interest and principal over the course of his mortgage. *Id.* at 92. However, the Trustee argued the fees were excessive, did not benefit the estate, and the fees were inaccurate because Mr. Colecchia failed to attend several hearings and conferences on behalf of the debtors. *Id.* at 92-93. The court noted that the services did not necessarily have to benefit the estate, but they needed to be reasonable and necessary. *Id.* at 93.

The court found that Mr. Colecchia's fees were too high because Mr. Colecchia included unnecessary, excessive and inappropriate fees. *Id.* at 97. For example, Mr. Colecchia held himself out as an expert in the subject matter of the adversary proceeding; however, he spent over 47 hours researching the issue, which the court considered "over-lawyering."[6] *Id.* Furthermore, Mr. Colecchia filed several amended plans before the completion of the adversary proceeding, but all of the plans required knowledge of the outcome of the litigation and therefore could not be confirmed until the adversary proceeding was completed. *Id.* at 98. Due to Mr. Colecchia's actions and after reviewing the original terms of the retainer agreement, the court reduced the fees from $17,837.00 to $11,837.00.[7] *Id.*

---

[6] The court also noted "an attorney should not, without associating competent counsel, accept cases counsel is incompetent to handle." *In re Younger,* 360 B.R. at 93.

[7] The court did not reduce Mr. Colecchia's fees for impermissible "lumping," but did note lumping was improper and put future offenders on notice that their fees would be reduced. *Id.* at 9.

In *In re Szymczak*, 246 B.R. 774, 781-83 (Bankr. D.N.J. 2000), an attorney sought fees above the customary fixed fee. There, the court bifurcated the fees between those that were normal and customary and those that were beyond normal and customary. The court held that the normal and customary work could be compensated via a flat fee guided by the customary rates in the district. *Id.* at 781. Compensation for work above the normal and customary range would be via the conventional lodestar method. *Id.* at 782. The court did note that any services provided needed to be done so in a cost effective manner and that excessive, redundant and unnecessary work should be excluded from the fee submission. *Id.* at 782-83. ("Simply because an attorney spent time, does not mean it is compensable or that counsel used the most economical means of rendering the services.").

In *In re Robinson*, 368 B.R. 492 (Bankr. E.D. Va. 2007), Tommy Andrews, Jr., the debtor's attorney, sought approval and payment of a supplemental application for compensation in the amount of $13,351.20.[8] The debtor objected to the fee. The court concentrated on the debtor's retainer agreement. The retainer agreement had confusing language leading the debtor to believe that fees were capped at $3,000.00. Furthermore, the debtor's attorney represented to the court that granting the application would have no prejudice to creditors. The court noted that a fee application can be granted if it prejudice's creditors, but it must plainly and conspicuously inform the creditors of any reduction in their recovery. *Id.* at 500.

The court also took issue with the $10,653.17 in fees for litigating objections to confirmation. Although the issue was not novel, the court allowed some extra time for research due to the effects of BAPCPA. Therefore, the court did not make the debtor pay for the full "learning curve" and reduced the fees for litigating objections to confirmation to 60% of the fees requested. *Id.* at 501 (noting unfairness in making the debtor "pay full freight, since the

---

[8] The total amount sought was $16,351.20.

knowledge acquired by counsel would also benefit future clients."). The reduction represented what the court felt fairly represented the time that would be required if the same issue arose a few years down the road and the counsel had acquired additional experience with them.[9]

In *In re Cahill*, 428 F.3d 536 (5th Cir. 2005), the debtor's attorney requested a fee of $3,758.08, although the case appeared to be simple and involve a smaller than average amount of work. The bankruptcy court reduced the award to $1,237.00 and supported its conclusions with ten (10) findings including the typical attorneys' fee award in similar cases, the lack of novelty in the case, and that the attorneys did not adequately prepare for the confirmation hearing or perform certain services in a timely matter. The Fifth Circuit affirmed the district court's decision to uphold the bankruptcy court's determination to grant lower than requested fees. *Id.* at 542. The Fifth Circuit reiterated that 11 U.S.C. §330(a)(2) gives the court discretion to "award compensation that is less than the amount requested," although the bankruptcy court "must explain the weight given to each factor that it considers and how each factor affects its award." *Id.* at 539-40. *See also In re Celotex Corp,* 227 F.3d at 133 (requiring court to set forth how *Johnson* factors apply when awarding compensation).

In *In re Acevedo*, 2014 WL 6775272 (Bankr. W.D. Mich. Nov. 24, 2014), the court would not allow compensation at an attorney's rate for tasks that clerical staff or paraprofessionals may perform. The court also chastised the attorney for lumping fees, and noted that the attorney did not meet the burden of persuading the court that his request for compensation was appropriate. *Id.* at *6 (indicating attorney spent unreasonable amounts of time on various tasks that were often performable by secretaries or paralegals). The attorney's

---

[9] The Court also reduced the amount by a further 20% for the sake of equity because of the attorney's questionable retainer agreement and his false representations to the court.

application requesting $10,722.94 in fees and $44.11 in expenses[10] was denied as to fees, although the court did award the expenses. *Id.* at 5.

These cases make clear that I have considerable discretion when calculating fees. While I must consider all applicable section 330 criteria, the fee can still be measured in part by reference to the no-look fee. *See In re Eliapo*, 468 F.3d 592, 601 (9th Cir. 2006) (indicating typical problems encountered in a chapter 13 case do not require courts to award more than the presumptive fee); *In re Cahill,* 428 F.3d at 541 ("This precalculated lodestar [the no-look fee] aids bankruptcy courts in disposing of run-of-the mill Chapter 13 fee applications"). *See also In re Szymczak*, 246 B.R. at 781-82 (the no-look fee is a guideline for routine matters, such as filing a plan or a modification, and then use the lodestar method for non-routine or extraordinary matters); *In re Watkins*, 189 B.R. 823, 828 (Bankr. N.D. Ala. 1995) (indicating "if a request for additional fees is made, that the 'normal and customary standard' should be applied first and if the court finds that the case, or work in it, falls outside of that standard, then the lodestar method should be applied to calculate whatever additional fees are appropriate.").

With section 330 and these cases as my framework, I will now turn to the application. I have reviewed the application exhaustively. I went through each time entry and, where appropriate, compared the time entry to the associated docket entry. I reviewed each iteration of the plan, beginning with the last plan filed by Debtor's prior counsel, to compare each amended plan to the plan that preceded it. I reviewed each time entry to assess the value of the services to the Debtor, and whether the time appeared reasonable. After having done so I find that the only reasonable portion of the Application is Mr. Bublick's hourly rate. $375.00 an hour, for an attorney of Mr. Bublick's experience in the consumer bar is on the higher end but is still a reasonable rate. However, Mr. Bublick appears to have exaggerated his time significantly, or

---

[10] The court considered previous awards of fees to the attorney when denying the application without prejudice.

taken far more time than was appropriate for a particular task. Moreover, there are many tasks Mr. Bublick performed that were not necessary, or that provided no benefit to the Debtor.

For example, Mr. Bublick charged 1.4 hours to fill out numbers on a form motion to value. Mr. Bublick charged 26.9 hours for a pretrial stipulation which, while lengthy, did not warrant a charge of over $10,000.00. Mr. Bublick spent hours on an opening statement for a motion to reinstate that did not warrant any opening statement. Mr. Bublick charged several hours to prepare an order that was never submitted on the Garcia dispute and which order I had directed should only state "for the reasons stated on the record." Based on the repeated overcharging for even the most routine tasks, I assumed that Mr. Bublick exaggerated his time for all charges, and so, with respect to matters, the time for which I could not independently make an assessment, I assumed that Mr. Bublick doubled the time actually incurred.[11] Thus, for example, for every phone call with the Debtor, I reduced the charge by half. For any "odd numbered" charges, *e.g.* .7, I gave Mr. Bublick the larger portion of the reduction, *e.g.,* .4 instead of the original .7. Mr. Bublick billed 7.0 hours to draft a four page opposition to various Garcia motions which I reduced to 1.5 hours. Bublick also billed 4.0 hours to file a simple motion to apply certain rules to a contested matter, which I reduced to .3 hours.

I made additional reductions. Mr. Bublick's retainer said he would charge the Debtor $375.00 an hour. However, Mr. Bublick charged approximately 12 hours at $450.00 an hour. The portion of those 12 hours that I did allow were reduced to $375.00 an hour. I did not allow any fees where Mr. Bublick impermissibly lumped the entries, except to the extent I was able to determine how the fees could be calculated. I did not allow Mr. Bublick any time for preparation of the tax returns for which he charged the Debtor 7.0 hours, since Mr. Bublick was not retained

---

[11] I did not reduce time for attending the depositions or the evidentiary hearing; I assumed that time was accurately recorded.

to prepare the Debtor's tax returns[12]. I also did not allow Mr. Bublick any fees for preparation of any of the modifications since none have been approved, and all which appear to have been filed to address Mr. Bublick's fees. Most importantly, when I overruled creditor Garcia's objection to confirmation I made clear the Debtor had one more chance to file a plan and if that plan wasn't confirmed the case would be over. Mr. Bublick cannot circumvent my order and seek to modify the final (26th) plan by filing subsequent modifications. Finally, I did not allow any charges relating to the fee application because the retainer agreement does not include such charges and because the applications provided no benefit to the Debtor.

The Application as adjusted reflected the following charges after the reductions I have just described:

| Task | Hours |
|---|---|
| Administration of case: | 7.2 hours (reduced from 14.6) |
| Chapter 13 Plan: | 5.0 hours (reduced from 23.9) |
| Confirmation Hearings: | 4.8 hours (reduced from 10.7) |
| Fee application: | 0.0 (reduced from 8.8) |
| Modify Chapter 13 Plan: | 0.0 (reduced from 7.5) |
| Motion to Set Aside Dismissal: | 3.6 (reduced from 19.9) |
| Motion for Stay Relief (Garcia) | 1.8 (reduced from 2.9) |
| Motion to Value (Garcia Evidentiary) | 20.8 (reduced from 53.5) |
| Motion to Value (CitiBank) | .9 (reduced from 3.0) |
| Motion to Value (Hialeah Property) | 1.2 (reduced from 1.8) |
| Motion to Value (NMB Property) | 1.6 (reduced from 2.7) |
| Objection Confirmation (Garcia) | 53.5 (reduced from 162.80) |
| Objections Claims | 4.3 (reduced from 6.7) |
| Objections Confirmation by Trustee | .7 (reduced from 1.4) |
| Property Taxes | 3.1 (reduced from 6.2) |
| Schedules/Statement of Financial Affairs | 2.8 (reduced from 5.2) |
| Tax Return Preparation | 0.0 (reduced from 7.0) |

After all of these adjustments were made, I then reviewed the total time by task to assess the reasonableness of the charges in light of the framework of section 330 and the no-look fees.

---

[12] I also removed the $250.00 expense for tax preparation software.

While the no-look fees are not dispositive of my consideration of the charges unrelated to the Garcia litigation they certainly provide guidance regarding what is "reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

I first turn to those fees related to the "base services" included in the $3500.00 no-look fee. I include in this category case administration, chapter 13 plan, confirmation hearings, claim objections, objections to confirmation by trustee, property taxes (which are really just specific claim objections), and schedules and statement of financial affairs. These total (after the reductions I already described) 27.9 hours or $10,462.50, almost triple the no-look fee. Of course, Mr. Bublick was not the Debtor's original counsel and so there were certain services Mr. Bublick did not provide, such as attending the first meeting of creditors. But, because in balance those services are not significant I won't adjust the number below $3,500.00. I will make an upward adjustment for the 3.1 hours Mr. Bublick spent on the real property taxes which required additional effort and investigation over "routine" claim objections. Thus, I have added an additional $1,162.50 for the basic services for a total of $4,662.50. I am not awarding additional time for the many plan iterations since virtually all of the amendments arose from either calculation errors by Mr. Bublick or were only minor changes to the preceding plan.

I next turn to the charges that relate to other "no-look charges" in the Chapter 13 Fee Guidelines. These include three motions to value unrelated to the Garcia litigation and one motion to reinstate.[13] In the Application, after my reductions, the time for these three motions totals $1,387.50 (the original amount requested was 7.5 hours or $2,812.50). The no-look fee for

---

[13] The first motion to reinstate was actually filed by Mr. Frank and Mr. Bublick did virtually no work on its resolution.

these would be $750.00 each or $2,250.00. Accordingly I will allow Mr. Bublick the no-look fees for the three motions to value, rather than my line by line reduction.

The second motion to reinstate was granted but creditor Garcia filed a motion to reconsider. I have already reduced Mr. Bublick's time for this motion to reinstate and motion to reconsider from 19.9 hours to 3.6 hours, which has a value of $1,350.00. The no-look fee for a motion to reinstate is $500.00 which I will allow. The balance of $850.00 will be disallowed as the motion to reconsider was litigated with the Garcia motion to value and objection to confirmation and the fees I have allowed are more than appropriate to compensate Mr. Bublick for the efforts and results achieved.

The Garcia litigation includes the motion to value, objection to confirmation (of the 23rd Amended Plan), motion to reconsider reinstatement and motion for stay relief. I have already reduced the $83,000.00 (219.2 hours) requested for the Garcia litigation to $26,662.50 (71.1 hours).

The litigation did include a 29 page joint stipulation of undisputed facts, disputed facts and issues of law to be litigated, motions in limine, retention of an expert, and depositions. Mr. Bublick understandably communicated often with his client. While Mr. Bublick has shown a tendency to overdo responses, because of the nature and extent of the issues raised by Garcia I find my reductions adequately reflect what Mr. Bublick was required to do under the circumstances. Even though I had to drastically reduce Mr. Bublick's fees, the amount of work required to litigate the Garcia matter was, nonetheless significant, and so I will not make any further reductions.

After the trial I overruled Garcia's objection to confirmation and granted in part and denied in part the motion for relief from stay. And thereafter I confirmed the Debtor's 26th amended plan. Thus, the Debtor benefited from Mr. Bublick's efforts.

In sum, I have determined Mr. Bublick's fees should be allowed as follows:

| | |
|---|---|
| Basic Services | $ 3,500.00 |
| Additional Fees for Real Property Taxes | $ 1,162.50 |
| Three Motions to Value | $ 2,250.00 |
| Motion to Reinstate | $ 500.00 |
| Garcia Litigation | $26,662.50 |
| | $34,075.00 |

## **CONCLUSION**

This case required some significant efforts relating to litigation. But for that litigation the fees in this case would have fallen well within the norm for a chapter 13 case. Unfortunately the litigation required more time than one would normally see in a chapter 13 case because the creditor pushed back and Mr. Bublick was required to respond.

Mr. Bublick clearly over exaggerated time and over stated time, but the law required me to explain any reductions in his fees. Thus, I was required to spend several days reviewing the Application which I have done. I hope in the future Mr. Bublick will make an effort to accurately record his time as his failure to do so in this case was an imposition on all parties and on the court.

###

Copies to:
Jordan Bublick, Esq.
Nancy Neidich, Chapter 13 Trustee

Attorney Bublick shall serve a copy of this Order upon all parties in interest and file a certificate of service with the court.